Filed: July 14, 1998
Corrected:  July 28, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 96-2785
(CA-95-2032-PJM)

---

Michael E. Harris,

Plaintiff - Appellant,

versus

Prince George's County Public Schools,

Defendant - Appellee.

---

**CORRECTED**
O R D E R

---

The court amends its opinion filed April 20, 1998, as follows:

On page 3, first full paragraph, line 4 -- the words "and evaluating" are deleted.

On page 4, second full paragraph, line 7 -- the word "evaluated" is changed to "assessed."

On page 5, first full paragraph, line **4** -- the words "evaluations given" are deleted and are replaced by the words "observations and evaluations."

For the Court

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL E. HARRIS,
Plaintiff-Appellant,

v.

No. 96-2785

PRINCE GEORGE'S COUNTY PUBLIC
SCHOOLS,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-95-2032-PJM)

Submitted: March 10, 1998

Decided: April 20, 1998

Before WILKINS and NIEMEYER, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael E. Harris, Appellant Pro Se. Sheldon Lewis Gnatt, REI-
CHELT, NUSSBAUM, LAPLACA & MILLER, Greenbelt, Mary-
land, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Harris appeals the district court's entry of summary judgment against him in this action alleging discrimination on the basis of race and gender. Harris raised claims under Title VII for discrimination and retaliation, 42 U.S.C. §§ 2000e-1 to -17 (1994); claims under the Maryland Fair Employment Practices Law (MFEPL), Md. Code Ann. (1994 Repl. Vol. & 1997 Supp.), Art. 49B §§ 14-18, and Maryland common law claims for defamation and tortious interference with contractual relations. We affirm the district court's entry of summary judgment.

I

Harris taught for one year, 1991-92, in the Prince George's County public schools (PGCPS), at the James Madison Middle School (JMMS). According to evaluations filed throughout the year, Harris had serious problems with classroom management and instructional planning and delivery. During the course of the year, Harris was observed in the classroom several times by different supervisors, black and white, male and female. Harris was provided with extra days of in-service training to help him with these problems. The observations and the efforts made to assist Harris were documented in his file. By December 1991, Paul Lewis, the principal of JMMS, was concerned for the safety of Harris's students. On the evaluation made between semesters, Harris was rated unsatisfactory in eight of ten categories under teacher performance. In April, Lewis requested permission to terminate Harris before the end of the year. Instead, the Board provided a full-time teacher for the classroom who did most of the teaching, though Harris remained in the classroom.

Harris's final evaluation before the end of the school year rated him unsatisfactory in two categories under teacher performance. In

2

mid-June, Lewis provided Harris with what Lewis later characterized as a "dummy" evaluation, designed to enable Harris to move on and get a job outside of teaching, but which Harris contends is his actual final evaluation. The Board ended Harris's employment.

In summer and fall 1993, Harris began to apply for teaching jobs. The potential employers sought references from PGCPS. Braddock, a black woman who was vice-principal of JMMS and participated in observing Harris, rated him below average in certain categories. Principal Lewis on some forms rated Harris below average in some categories and overall. On some references Lewis checked between average and below average. He made both positive and negative comments.

Harris filed a charge with the Equal Employment Opportunity Commission in November 1994, citing the unfavorable job references because of his race and sex as the source of discrimination. He cited August 12, 1994, when he began to seek employment with another school district, as the relevant date of discrimination. The EEOC issued a right to sue letter in March 1995. Harris subsequently filed this action.

II

We review de novo the district court's grant of summary judgment. See Sempione v. Provident Bank of Maryland, 75 F.3d 951, 954 (4th Cir. 1996). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Here, the district court held correctly that allegations not made in the administrative phase of the discrimination claim cannot be raised in a subsequent proceeding. Evans v. Technologies Applications, 80 F.3d 954, 962-63 (4th Cir. 1996). This limits Harris's cause of action to complaints concerning the references given to prospective employees.

Dissemination of negative employment references for discriminatory motives can constitute a violation of Title VII. Hashimoto v.

3

Dalton, 118 F.3d 671, 675 (9th Cir. 1997). To prevail on a Title VII claim of discrimination, a plaintiff must first make a prima facie case by raising an inference that defendant acted with discriminatory intent. Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992). Plaintiff can accomplish this either through direct evidence or by using the McDonnell Douglas method that provides an inference of discriminatory intent. McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802 (1973). Under that proof scheme, Harris would be required to prove: (1) that he is a member of a protected class; (2) that he qualified for a favorable job reference because his job performance had been satisfactory; and (3) that he was given negative references in spite of his qualifications and performance.

If a prima facie case were established by that proof, it would give rise to a presumption of discrimination that the employer could rebut by showing a legitimate, nondiscriminatory reason for his actions. See Saint Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). Once the employer has offered a legitimate explanation, the presumption of discrimination drops away and the employee must prove that the employer's proffered reason is pretextual and that race or gender actually motivated the action. Id. at 507-08. The employee retains the ultimate burden of persuading the trier of fact that the employer engaged in improper discrimination. Id. at 507 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Harris has no direct proof of discriminatory intent on the part of the Board of Education in making negative references to those who considered hiring Harris as a teacher. Under McDonnell Douglas, Harris failed to establish the second element, that he qualified for a favorable reference. The school records made contemporaneously with Harris's teaching year establish that he performed unsatisfactorily throughout the year as assessed by different individuals including Vice-Principal Braddock, who is black, and Principal Lewis, who is male. Extraordinary measures were taken to help Harris acquire the teaching skills he lacked, but to no avail. Harris's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for the negative referrals. See Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1288 (4th Cir. 1985).

4

The inconsistent exit evaluation given to Harris by Lewis does not support an inference of discrimination and is explained as Lewis's effort to help Harris gain other, non-teaching employment. The fact that all the observations and evaluations during the year were consistently negative in regard to Harris's class preparation and management skills, and that the exit evaluation was not issued until after Harris had resigned, supports this explanation. As the district court concluded, the evaluation was inconsistent but not indicative of discrimination. Therefore, summary judgment was appropriate on this claim.

III

Harris also alleged a retaliation claim under 42 U.S.C. § 2000e-3 (1994). At the time of the district court's decision, this Court's ruling in Robinson v. Shell Oil Co., 70 F.3d 326 (4th Cir. 1995), held that Title VII's anti-retaliation provision did not apply to former employees. Therefore, the district court held that Harris had no viable retaliation claim. The Supreme Court later reversed our holding, Robinson v. Shell Oil Co., ___ U.S. ___, 65 U.S.L.W. 4103 (U.S., Feb. 18, 1997) (No. 95-1376), and Harris contends that his claim should be remanded to the district court for reconsideration.

Dissemination of negative employment references for retaliatory motives can constitute a violation of Title VII. Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997). Here, however, the district court held that aside from the Robinson ruling, Harris' proffered proof failed to support his claim of discriminatory retaliation by this means. His documented performance throughout the year supported the references given. Furthermore, most of the references were given before Harris filed his EEOC claim, so could not have been given in retaliation for that protected conduct. We agree with that determination and affirm dismissal of this claim on that alternative basis.

IV

The district court dismissed Harris's claims under the MFEPL for the same reasons it dismissed the Title VII claims: the record did not support the allegations of discrimination or retaliation. Under the Maryland statute, the employee must prove that he "is a member of a class protected by the Act and that the [action at issue] was made

5

because of the employee's membership in that class." <u>Brandon v. Molesworth</u>, 655 A.2d 1292, 1302 (Md. App. 1995). As Harris was unable to sustain the burden of showing that an issue of fact existed as to whether the unfavorable references were issued for discriminatory or retaliatory reasons, summary judgment on these claims was appropriate.

The district court dismissed the defamation claim on the ground that the references given did not exceed the qualified privilege of a former employer to give a reference. <u>See Bagwell v. Peninsula Regional Med. Ctr.</u>, 665 A.2d 297, 317-18 (Md. App. 1995). Counsel for Harris conceded judgment on the remaining claim, interference with prospective contractual advantage.

We affirm the district court's entry of summary judgment in this action. We deny Harris's motions to amend the record and to expedite the appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6